608 S.E.2d 874

**The STATE, Respondent,**

**v.**

**Timothy Scott FREY, Appellant.**

**No. 3878.**

Court of Appeals of South Carolina.

Submitted Sept. 15, 2004.

Decided Oct. 25, 2004.

Withdrawn, Substituted and Refiled Jan. 25, 2005.

Ricky Keith Harris, of Spartanburg, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Deborah R.J. Shupe, all of Columbia; and Solicitor Harold W. Gowdy, III, of Spartanburg, for Respondent.

## ORDER

PER CURIAM:

The State has petitioned for a rehearing and argues our prior opinion was incorrect in several particulars. While we deny the petition for rehearing, we briefly address the State's contentions.

The State argues initially that the record establishes its compliance with the statutory mandate requiring that "[b]lood and urine samples must be obtained by physicians licensed by the State Board of Medical Examiners, registered nurses licensed by the State Board of Nursing, and other medical personnel trained to obtain the samples in a licensed medical facility." S.C.Code Ann. § 56–5–2950(a) (Supp.2003). We disagree, for we remain firmly convinced that this record fails to establish that Scott Darragh is either a licensed physician, registered nurse or is otherwise properly qualified under the statute.

The State further argues that it would have been unduly burdensome to "utilize the out-of-state subpoena process, and expend Spartanburg County's limited financial resources, to

secure the testimony of" Darragh. Assuming Darragh has moved to another state as alleged, the suggestion that Darragh's qualifications could be established *only* by his presence and testimony at trial is specious.

We also view as meritless the State's newly asserted efforts to recast the issue as one of "chain of custody."

■ The State finally contends that a remand to the trial court is the appropriate remedy. While we agree that a remand is appropriate under the circumstances, we do not adopt the State's expansive proposal for the taking of new evidence. We have reviewed the cases cited by the State for the proposition that it is entitled to a second bite of the apple to establish Darragh's qualifications: *State v. Primus,* 312 S.C. 256, 440 S.E.2d 128 (1994) (case remanded to lower court to conduct an initial *Jackson v. Denno* hearing to determine whether the defendant was "in custody" for *Miranda* purposes when he made statements to a police officer); *State v. Williams,* 258 S.C. 482, 189 S.E.2d 299 (1972) (case remanded to trial court to consider defendant's motion to strike the in-court identification testimony where the trial court "overruled the motion without going fully into whether or not there had, in fact, been improper prior confrontations, and whether, in fact, either or both of the in-court identifications were perchance the tainted product of any such unlawful confrontation"); *State v. Sampson,* 317 S.C. 423, 454 S.E.2d 721 (Ct. App.1995) (court declined on appeal to rule on motion to suppress, instead remanding to the trial court to conduct an initial hearing on the sufficiency of a search warrant affidavit). These cases represent remands to trial courts to address issues that were not fully addressed and developed during the original trial. Remand in such circumstances is far removed from the request here—allowing the State a *second* evidentiary hearing. We conclude the remand should be limited to the existing record for the trial court to determine whether the State's failure to establish the qualifications of Darragh per section 56–5–2950(a) "materially affected the accuracy or reliability of the tests results or the fairness of the testing procedure." S.C.Code Ann. § 56–5–2950(e) (Supp.2003).

The original opinion, therefore, is withdrawn and the attached opinion is substituted therefor.

KITTREDGE, J.:

Timothy Scott Frey appeals his conviction for driving under the influence. Frey seeks a new trial, contending the circuit court improperly admitted evidence of the results of a blood-alcohol test. We reverse in part and remand.

## FACTS AND PROCEDURAL HISTORY

On December 21, 2001, Frey, while driving a pick-up truck in Spartanburg County, collided with two Spartanburg County Sheriff's Office vehicles. Frey was injured in the accident and transported to the Spartanburg Regional Medical Center. The police officer investigating the accident, Trooper L.D. Smith of the South Carolina Highway Patrol, met Frey at the hospital emergency room. After Trooper Smith advised Frey of his rights under the Implied Consent Laws, Frey consented to a blood sample being taken for blood-alcohol level analysis.

Trooper Smith prepared a standard-form SLED Blood Collection Report in connection with obtaining the blood sample from Frey. According to the report, the blood was drawn from Frey by an individual named "Scott Darragh." Darragh signed the form in the space labeled "licensed or trained collector," and the form was admitted in evidence over Frey's hearsay objection. The report, however, does not indicate what position Darragh held at the hospital nor did the State offer any evidence to show what, if any, medical training or licensure Darragh had that would qualify him to obtain the blood sample.

At trial, Frey sought to suppress the admission of the blood-alcohol test results on the grounds the State did not present any evidence that the blood sample was drawn by a qualified individual as required under the implied consent statute. The circuit court denied Frey's request and admitted the test results. Frey was convicted and sentenced. This appeal followed.

## STANDARD OF REVIEW

A trial judge's decision to admit or exclude evidence is within his discretion and will not be disturbed on appeal

absent an abuse of discretion. *Elledge v. Richland/Lexington Sch. Dist. Five*, 352 S.C. 179, 185, 573 S.E.2d 789, 792 (2002).

### *LAW/ANALYSIS*

■ Frey argues the circuit court erred in the admission of the blood-alcohol analysis test results.

Under the Implied Consent Statute, an arresting officer may direct that a blood sample be collected from a person arrested for DUI if that person is unable to submit to a breathalyzer test for medical reasons. S.C.Code Ann. § 56–5–2950 (Supp.2003). The statute requires, however, that blood samples be collected by qualified medical personnel: "Blood and urine samples must be obtained by physicians licensed by the State Board of Medical Examiners, registered nurses licensed by the State Board of Nursing, and other medical personnel trained to obtain the samples in a licensed medical facility." S.C.Code Ann. § 56–5–2950(a). The circuit court found there was enough "circumstantial evidence" to establish statutory compliance based upon the fact that, following the trooper's request, Darragh appeared in the emergency room wearing "hospital like scrubs."

■ We disagree with the reasoning of the circuit court. With any question regarding statutory construction and application, the court must always look first to the legislative intent as determined from the plain language of the statute. *State v. Scott*, 351 S.C. 584, 588, 571 S.E.2d 700, 702 (2002); *State v. Morgan*, 352 S.C. 359, 365–66, 574 S.E.2d 203, 206 (Ct.App. 2002). The plain language of section 56–5–2950 requires that, when an officer directs a blood sample be collected from a person arrested for DUI, the sample "must" be obtained by trained, qualified medical personnel. Our courts have consistently held that use of words such as "shall" or "must" indicates the Legislature's intent to enact a mandatory requirement. *See, e.g., South Carolina Police Officers Ret. Sys. v. City of Spartanburg*, 301 S.C. 188, 191, 391 S.E.2d 239, 241 (1990) (noting that statutory prescriptions couched in language such as "shall" and "must" are mandatory in application and effect); *Starnes v. South Carolina Dep't of Pub. Safety*, 342 S.C. 216, 221, 535 S.E.2d 665, 667 (Ct.App.2000) (same). The plain language of section 56–5–2950 demands that the State

offer some evidence to establish compliance with this statutory requirement.

■ The plain language of section 56–5–2950 further requires that we reject the State's suggestion that the mere appearance of Scott Darragh in the emergency room is sufficient, for the statute mandates that the blood sample "must" be obtained by a trained medical professional. One's mere appearance in a hospital wearing generic hospital attire is not evidence of one's medical training. We likewise reject the State's assertion that Darragh's signature on the SLED form in the space labeled "licensed or trained collector" is sufficient to establish compliance with the statute. Simply signing a preprinted form does not provide any indicia that the signatory's qualifications meet the specific licensing or training requirements of section 56–5–2950.[1] To hold otherwise would render the minimal foundational requirement of section 56–5–2950 without any meaningful force or effect. In light of the State's failure to satisfy this basic requirement, we are constrained to find the circuit court erred in finding the foundational requirements of section 56–5–2950 had been satisfied.[2]

1. We reject the State's argument to the extent it relies on the signature of Darragh as substantive evidence of his qualifications to collect the blood sample. We find guidance on this point in the manner our Rules of Criminal Procedure address the admission of a report of chemical analysis to establish the physical evidence of a controlled substance. Under narrowly limited circumstances, such a report signed by the chemist or analyst who performed the test may be admitted for chain of custody and substantive purposes. Rule 6(a), SCRCrimP. However, if the defendant timely objects to the admission of the report, the signed report alone is insufficient to establish that the tests were performed by a SLED-certified chemist and were conducted pursuant to SLED-approved procedures. The rule instead requires that, in the face of a proper objection to the report, "the trial judge shall require the chemist or analyst to be present at trial for the purpose of personally testifying." In the present case, the admission of the blood collection report to establish the qualifications of Darragh was hotly contested—subject to repeated defense objections. While the SLED form here may maintain its efficacy for chain of custody purposes, we decline to find that the medical training and qualification requirements mandated under section 56–5–2950 may be proven by the mere signature on the form.

2. We are mindful of the legitimate concern of the trial court that law enforcement officers who request blood samples should not be required to demand detailed background information about the hospital employee who shows up to take the sample. This concern, however, is

■ The State alternatively asserts that, assuming Darragh was not qualified under the statute to collect the blood sample, suppression would not be warranted. Specifically, the State contends Frey was not prejudiced by the failure to comply with the statute. The State bases its argument on the principle that where a statute is silent about the admissibility of evidence, the "exclusion of evidence should be limited to violations of constitutional rights and not to statutory violations, at least where the appellant cannot demonstrate prejudice at trial resulting from the failure to follow statutory procedures." *State v. Sheldon,* 344 S.C. 340, 343, 543 S.E.2d 585, 586 (Ct.App.2001) (quoting *State v. Chandler,* 267 S.C. 138, 226 S.E.2d 553 (1976)).

■ Recent revisions to section 56-5-2950 are in accord with the State's position. The statute was amended in 2003 to include the addition of subsection (e),[3] which provides, in pertinent part:

> The failure to follow any of these policies, procedures, and regulations, or the provisions of this section, shall result in the exclusion from evidence any tests results, *if the trial judge* or hearing officer *finds that such failure materially affected the accuracy or reliability of the tests results or the fairness of the testing procedure.*

S.C.Code Ann. § 56-5-2950(e) (Act No. 61, 2003 S.C. Acts 689) (emphasis added).

Since the statutory mandate in question is inextricably connected to the accuracy and reliability of the blood test results, we remand to the trial court. We are persuaded that

---

misplaced. There is no basis to find fault with the actions of Trooper Smith. Law enforcement officers may generally rely on the implicit and explicit assurances of medical providers regarding the qualifications of personnel who are assigned to assist them in their investigation. The failure of proof in this case is directly attributable to the State's failure to establish the qualifications of Scott Darragh.

**3.** The 2003 revisions to § 56-5-2950 became effective shortly after the trial of this case. Because subsection (e) addresses procedural rather than substantive rights, it is remedial in nature, and therefore retroactive in its application. *See South Carolina Dep't of Revenue v. Rosemary Coin Machs., Inc.,* 339 S.C. 25, 28, 528 S.E.2d 416, 418 (2000) (noting that "statutes that are remedial or procedural in nature are generally held to operate retrospectively").

in the first instance the issue of prejudice should be addressed by the trial court. We find instructive the case of *State v. Sheldon*, 344 S.C. 340, 543 S.E.2d 585 (Ct.App.2001). Sheldon, a then on-duty state trooper, was charged with reckless homicide. The Highway Patrol participated in the accident investigation, in violation of a statute. As a result of the statutory violation, the trial court granted Sheldon's motion to suppress evidence gathered or prepared by the Highway Patrol's Multi-disciplinary Accident Investigation Team (MAIT). The State appealed, and this court noted that evidence obtained in violation of a statute "is not necessarily inadmissible absent a demonstration of prejudice resulting from the violation." *Id.* at 344, 543 S.E.2d at 586. We remanded to the trial court since "[i]t did not make any findings on whether Sheldon would be prejudiced by MAIT's investigation of the collision." *Id.* Here, the trial court on remand shall, on the existing record, determine whether the State's failure to comply with section 56–5–2950(a) "materially affected the accuracy or reliability of the tests results or the fairness of the testing procedure." *Cf. State v. Huntley*, 349 S.C. 1, 6, 562 S.E.2d 472, 474 (2002) (noting that, in a DUI prosecution, breathalyzer operator error did not impact the accuracy of the breath test results, concluding "[t]here is no question the breathalyzer machine was operating properly and its results were reliable"); *State v. Chandler*, 267 S.C. 138, 142, 226 S.E.2d 553, 555 (1976) (holding that evidence seized at nighttime was properly admitted pursuant to warrant authorizing a search "in the daytime only" since the court determined the violation had no impact on the reliability or probative value of the evidence).

## CONCLUSION

Because the State failed to establish Frey's blood sample was obtained by a licensed physician, registered nurse, or "other medical personnel trained to obtain the samples in a licensed medical facility" as mandated by section 56–5–2950, we remand to the trial court to determine whether "such failure materially affected the accuracy or reliability of the tests results or the fairness of the testing procedure." An answer in the affirmative shall entitle Frey to a new trial, but

otherwise, the admission of the blood test results and resulting conviction shall stand affirmed.

**REVERSED IN PART AND REMANDED.**

HEARN, C.J., and HUFF, J., concur.