619 S.E.2d 1

**COLLINS MUSIC CO., INC., Respondent,**

**v.**

**IGT a/k/a IGT–North America, Appellant.**

**No. 4015.**

Court of Appeals of South Carolina.

Heard June 16, 2005.

Decided July 18, 2005.

Rehearing Denied Sept. 20, 2005.

---

R. Wayne Byrd, Wilson S. Sheldon, and R. Heath Atkinson, all of Florence and Ronald E. Boston, of Columbia, for Appellant.

James B. Van Osdell, Charles B. Jordan, Jr., and Cynthia Graham Howe, all of Myrtle Beach, James R. Gilreath, of Greenville and Scott M. Mongillo, of Summerville, for Respondent.

ANDERSON, J.:

The Horry County Clerk of Court issued a Transcript of Judgment, and subsequently an Amended Transcript of Judgment, in furtherance of Collins Music Co., Inc.'s (Collins) right to enforce in Nevada a judgment obtained against IGT. IGT appeals from the trial court's order denying its Rule 60(a), SCRCP motion to vacate the Amended Transcript of Judgment on the ground it improperly provides for post-judgment interest at the rate of fourteen percent (14%). We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Collins originally brought suit in 1994 against IGT asserting multiple causes of action arising from a contractual dispute. A jury returned a verdict of $15,000,000 in actual damages in favor of Collins. This Court dismissed IGT's appeal as untimely. *See Collins Music Co., Inc. v. IGT,* 353 S.C. 559, 579 S.E.2d 524 (Ct.App.2002).

Collins sought to enforce the judgment in Nevada pursuant to the Uniform Enforcement of Foreign Judgments Act, Nev. Rev.Stat. § 17.330–17.400. On January 14, 2002, the Horry County Clerk of Court issued a Transcript of Judgment. It provided for interest accruing at the rate of twelve percent (12%) per year. Thereafter, upon request by Collins, the Clerk of Court issued an Amended Transcript of Judgment. The amended transcript provided:

Interest accrues on South Carolina judgments (from causes of action arising prior [sic] January 1, 2001) at the rate of **14% per annum.** S.C.Code Ann. § 34–31–20(B) (2002 Cum. Supp.) **This cause of action was filed in 1994 so the 14% interest rate applies.**

(Emphasis in original.)

Collins filed the Amended Transcript of Judgment with the Nevada court on August 14, 2003, along with a supporting affidavit from Collins' counsel. A copy of the amended transcript was sent to IGT's Nevada counsel.

In September 2003, IGT filed and served its Rule 60(a), SCRCP motion seeking an order withdrawing and vacating the Amended Transcript of Judgment. The court denied the motion on February 20, 2004, and IGT appealed on March 18, 2004.

On March 24, 2004, IGT filed its motion for Leave to Deposit Money with Court in the Nevada action. IGT deposited the money with the Nevada court on April 2, 2004, and the Nevada court issued an Order for Disbursement of Funds in Satisfaction of Judgment on April 5. IGT did not appeal this order, and the funds were subsequently paid to Collins.

## *LAW/ANALYSIS*

IGT contends the trial court erred in failing to vacate and withdraw the Amended Transcript of Judgment. IGT asserts section 34–31–20 of the South Carolina Code, as amended by 2000 Act No. 344, does not allow for the collection of interest where a cause of action arose prior to January 2001, but final judgment was not rendered until after January 2001. In the alternative, IGT maintains the appropriate statutory interest is twelve percent (12%) and not fourteen percent (14%). We disagree.

## I.  Mootness

First, Collins contends the issue is moot and not available for review on appeal because IGT made the payment to the Nevada court prior to this appeal. We disagree.

A matter becomes moot "when judgment, if rendered, will have no practical legal effect upon [the] existing controversy. This is true when some event occurs making it impossible for [the] reviewing Court to grant effectual relief." *Curtis v. State,* 345 S.C. 557, 567–68, 549 S.E.2d 591, 596 (2001) (alteration in original) (quoting *Mathis v. South Carolina State Highway Dep't,* 260 S.C. 344, 346, 195 S.E.2d 713, 715 (1973)), *cert. denied,* 535 U.S. 1074, 122 S.Ct. 1954, 152 L.Ed.2d 856 (2002). In civil cases, there are three exceptions to the mootness doctrine: (1) an appellate court can retain jurisdiction if the issue is capable of repetition yet evading review, (2) an appellate court can decide cases of urgency to establish a rule for future conduct in matters of important public interest, and (3) if the decision by the trial court can affect future events or have collateral consequences to the parties, the appellate court can take jurisdiction. *Curtis* at 568, 549 S.E.2d at 596.

In the instant case, the third exception to the mootness doctrine is applicable. If IGT failed to make payment, the amount of interest charged against IGT would continue to increase. It would be nonsensical to require IGT to incur an ever-increasing amount of post-judgment interest in order to bring an appeal. As a result, we find this Court retains jurisdiction to hear this case and to decide the issue regarding post-judgment interest.

## II.  Statutory Construction

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Hawkins v. Bruno Yacht Sales, Inc.,* 353 S.C. 31, 39, 577 S.E.2d 202, 207 (2003); *Bayle v. South Carolina Dep't of Transp.,* 344 S.C. 115, 122, 542 S.E.2d 736, 739 (Ct.App.2001). "All rules of statutory construction are subservient to the one that the legislative intent must prevail if it reasonably can be discovered in the language used, and the language must be construed in the light of the intended purpose of the statute." *City of*

*Sumter Police Dep't v. One (1) 1992 Blue Mazda Truck (VIN # JM2UF1132n0294812)*, 330 S.C. 371, 375, 498 S.E.2d 894, 896 (Ct.App.1998). "Statutes, as a whole, must receive practical, reasonable, and fair interpretation, consonant with the purpose, design, and policy of lawmakers." *TNS Mills, Inc. v. South Carolina Dep't of Revenue*, 331 S.C. 611, 624, 503 S.E.2d 471, 478 (1998).

If a statute's language is plain, unambiguous, and conveys a clear meaning, "the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). The words of the statute must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's operation. *Hitachi Data Sys. Corp. v. Leatherman*, 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992). "Our goal in construing statutes is to prevent an interpretation that would lead to a result that is plainly absurd." *In re Timothy C.M.*, 348 S.C. 653, 655–56, 560 S.E.2d 452, 453 (Ct.App.2002) (citing *Florence County v. Moore*, 344 S.C. 596, 601, 545 S.E.2d 507, 509 (2001)); *Carolina Alliance for Fair Employment v. South Carolina Dep't of Labor, Lic., & Reg.*, 337 S.C. 476, 492, 523 S.E.2d 795, 803 (Ct.App.1999).

The legislature has sought to ensure amended statutes are not read in a way that leads to an absurd result. Section 2–7–50 of the South Carolina Code provides:

Whenever, in any act, reference is made to this Code for the purpose of altering, amending, adding to or repealing any part thereof, such reference, alteration, amendment, addition or repeal shall be construed to apply to the original law purporting to be revised in such revision as fully and specifically as though such original laws were mentioned in the act containing such reference, alteration, amendment, addition or repeal.

S.C.Code Ann. § 2–7–50 (1976).

A brief but relevant look at the history of the right to interest on judgments is edifying for the instant case.

According to the common law the execution could only issue for the precise sum adjudged to be due to the plaintiff, however long the enforcement of it might be postponed,

although in a new action he might recover the interest. The act of 1815 was intended to remedy this evil; it provides, "that in all judgments and decrees of the courts of law and equity hereafter to be obtained and rendered on any judgment, bond, bill or promissory note, or other cause of action bearing interest, the principal sum of the judgment, bond" & c. "shall continue to bear the same interest as the original cause of action did bear before the entry of judgment thereon," and that execution should issue therefor.

*Richardson v. Richardson,* 16 S.C.Eq. (McMul.Eq.) 103 (1841); *see also Sears v. Fowler,* 293 S.C. 43, 45, 358 S.E.2d 574, 575 (1987) (noting that at common law, judgments did not bear interest) (citing Annot., 15 A.L.R.3d 411, 414 (1967)). Interest is generally allowable pursuant to statutory enactments. *Sears,* 293 S.C. at 45, 358 S.E.2d at 575.

Section 34–31–20(B)'s predecessor provided: "all money decrees and judgments of courts enrolled or entered ... shall draw interest according to law, the legal interest shall be at the rate of six percent per annum." S.C.Code § 8–2 (1962). The six percent (6%) rate was carried over into the 1976 Code, and in 1979, the rate was changed to eight and three-fourths percent (8.75%). *See* 1979 Act No. 159. Effective June 9, 1982, the rate was increased to fourteen percent (14%). 1982 Act No. 445; *see also Southeastern Freight Lines v. Michelin Tire Corp.,* 279 S.C. 174, 175, 303 S.E.2d 860, 861 (1983). The 1982 Act included a statement regarding the effective date: "This act shall take effect upon approval by the Governor." 1982 Act No. 445, § 2.

In *Southeastern Freight Lines,* the South Carolina Supreme Court considered the impact of the 1982 Act on a judgment entered before the effective date, but not satisfied until after the date of the changed interest rate. *Southeastern Freight Lines v. Michelin Tire Corp.,* 279 S.C. 174, 175, 303 S.E.2d 860, 861 (1983). Finding the change in interest rate applied to all judgments, even those entered before the effective date but not yet satisfied, the court determined interest would be charged at eight and three-fourths percent (8.75%) before June 9 and fourteen percent (14%) after June 9, 1982. *Id.* at 175–76, 303 S.E.2d at 861–62.

At issue in the instant case are the changes to the interest rate made effective by 2000 Act No. 344. Section 34–31–20(B), prior to January 2001, provided: "All money decrees and judgments of courts enrolled or entered shall draw interest according to law. The legal interest shall be at the rate of fourteen percent per annum." S.C.Code Ann. § 34–31–20(B) (Supp.1999). Between January 1, 2001 and March 21, 2005, section 34–31–20(B) read: "All money decrees and judgments of courts enrolled or entered shall draw interest according to law. The legal interest is at the rate of twelve percent a year." S.C.Code Ann. § 34–31–20(B) (Supp.2004). Indubitably, the only change to the law was the certain rate allowed for interest.

The 2000 Act provided the following effective date: "This act takes effect January 1, 2001, and applies with respect to interest calculated pursuant to causes of action arising or accruing on or after that date." 2000 Act No. 344, § 4. The question before this Court is whether this provision requires a finding that a litigant in a case in which the cause of action arose before the effective date of January 1, 2001, but where judgment was not rendered until after that date, must forfeit the right to post-judgment interest.

Reading section 2–7–50 in conjunction with the 2000 Act and section 34–31–20, it is apodictic that the legislature intended there to be continuity in the charge of interest to judgments. Nothing in the 2000 Act indicates the legislature sought to create an aperture in coverage, thus eliminating from entitlement to interest litigants in cases accruing before January 1, 2001 but pending final judgment until after January 1, 2001. For this Court to construe the effective date section of the 2000 Act as eliminating interest based solely on what date a final judgment is rendered would constitute an absurd result.

Collins' cause of action arose prior to January 1, 2001. Under the clear, unambiguous wording of the 2000 Act's effective date section, the new interest rate does not apply. The version of section 34–31–20(B) that existed prior to the 2000 Act remained in effect and was not repealed by the passage of the 2000 amendment. We refuse to arbitrarily deny interest to Collins because of the date its judgment was

entered. Concomitantly, Collins is entitled to receive interest of its judgment against IGT.

In the instant case, unlike the *Southeastern Freight Lines* case, the 2000 Act included a statement denoting which judgments were affected by the new interest rate. The effective date provision clearly indicates it applies only to causes of action arising or accruing on or after January 1, 2001. Thus, the fourteen percent (14%) rate under the pre–2000 Act statute applies to Collins' judgment, and the amount does not change as a result of the 2000 Act.

Finally, we note that in the 2005 session, the legislature again amended section 34–31–20(B). However, the 2005 amendment has no bearing on the disposition of this case. Section 34–31–20(B) now reads:

> A money decree or judgment of a court enrolled or entered must draw interest according to law. The legal rate of interest is equal to the prime rate as listed in the first edition of the Wall Street Journal published for each calendar year for which the damages are awarded, plus four percentage points, compounded annually. The South Carolina Supreme Court shall issue an order by January 15 of each year confirming the annual prime rate. This section applies to all judgments entered on or after July 1, 2005. For judgments entered between July 1, 2005, and January 14, 2006, the legal rate shall be the first prime rate as published in the first edition of the Wall Street Journal after January 1, 2005, plus four percentage points.

2005 Act No. 27.

## *CONCLUSION*

We rule the fourteen percent (14%) rate applies to all causes of action arising between June 9, 1982 and December 31, 2000, whether or not a final judgment was entered prior to January 1, 2001. The order of the trial court is

**AFFIRMED.**

HUFF and WILLIAMS, JJ., concur.