654 S.E.2d 284

**John D. PEAKE, Appellant,**

**v.**

**SOUTH CAROLINA DEPARTMENT OF MOTOR VEHICLES, Respondent.**

**No. 4313.**

Court of Appeals of South Carolina.

Heard Nov. 6, 2007.

Decided Nov. 27, 2007.

590

Timothy Clay Kulp, of Charleston, for appellant.

Frank L. Valenta, Jr., of Blythewood, and Philip S. Porter, of Columbia, for respondent.

ANDERSON, J.:

Following a single car accident, John D. Peake (Peake) was arrested at the hospital for driving under the influence. He refused to consent to a blood alcohol test and, as a result, the South Carolina Department of Motor Vehicles (the Department) suspended his driver's license. The suspension was affirmed at an administrative hearing and on appeal to the circuit court. We reverse.

## *FACTUAL/PROCEDURAL BACKGROUND*

On February 5, 2005, Trooper J.T. Manley of the South Carolina Highway Patrol responded to a one car accident on I–26 in Charleston County. He found Peake, the sole occupant of the wrecked car, buckled into the driver's seat. As Trooper Manley spoke with Peake, he observed a strong smell of alcohol on Peake's breath and noted his slurred speech. EMS arrived shortly after Trooper Manley and transported Peake to Trident Regional Medical Center. At the hospital, Trooper Manley placed Peake under arrest for driving under the influence. Peake was read the *Miranda* rights and the Advisement of Implied Consent Rights. Trooper Manley then requested Peake provide a blood sample believing Peake's

condition precluded a breath test.¹ Peake stated he understood his implied consent rights and refused to submit a blood sample. Trooper Manley then issued Peake a Notice of Suspension which Peake refused to sign.

After receiving the Notice of Suspension, the Department suspended Peake's license for ninety days. Peake requested an administrative hearing pursuant to South Carolina Code section 56–5–2951(B)(2) (2006). At the April 26, 2005, hearing, Trooper Manley appeared and testified on behalf of the Department. He said he requested the blood sample because Peake was "not able to give a breath sample due to his condition." The record contains no explanation of Peake's condition. Peake did not appear though he was represented by counsel. Peake's counsel did not cross-examine Trooper Manley but asserted the mandatory suspension should be rescinded because the Department did not show medical personnel deemed Peake unable to give a breath sample in accordance with South Carolina Code section 56–5–2950(a). The hearing officer's order sustained the suspension reasoning "[Peake] verbally refused to give a blood or urine sample, as he was unable to give a breath sample."

Peake next appealed to the Court of Common Pleas in Charleston County where he complained Trooper Manley's testimony did not justify the request for a blood sample. Peake contended section 56–5–2950(a) requires law enforcement to seek the opinion of a medical professional that a person is incapable of providing a breath test. The Department argued Peake was improperly shifting the burden of proof, the Department's actions were presumably correct pursuant to the Administrative Procedures Act, and the record's substantial evidence supported the hearing officer's findings.

In its written order, the circuit court interpreted section 56–5–2950(a) to "require the opinion of a medical professional if the subject is unable to give a breath sample for some reason outside those enumerated by the statute (e.g. injured mouth, unconscious, dead)." However, the judge then affirmed the suspension concluding "under these facts, the officer was not required to seek the opinion of a medical professional as to Petitioner's ability to give a breath sample."

## STANDARD OF REVIEW

The South Carolina Administrative Procedures Act, S.C.Code Ann. section 1–23–310, *et seq.,* (2005), establishes the "substantial evidence" rule as the standard for judicial review of a decision of an administrative agency. *Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 276 S.E.2d 304 (1981); *Summersell v. South Carolina Dep't of Public Safety,* 334 S.C. 357, 513 S.E.2d 619 (Ct.App.1999), *vacated in part on other grounds,* 337 S.C. 19, 522 S.E.2d 144 (1999). Section 1–23–380(A)(5) of the South Carolina Code (Supp.2006) provides:

The court may not substitute its judgment for the judgment of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority of the agency;

(c) made upon unlawful procedure;

(d) affected by other error of law;

(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

The findings of an administrative agency are presumed correct and will be set aside only if unsupported by substantial evidence. *Kearse v. State Health & Human Servs. Fin. Comm'n,* 318 S.C. 198, 200, 456 S.E.2d 892, 893 (1995); *South Carolina Dep't of Motor Vehicles v. Nelson,* 364 S.C. 514, 519, 613 S.E.2d 544, 547 (Ct.App.2005); *Broughton v. South of the Border,* 336 S.C. 488, 496, 520 S.E.2d 634, 637 (Ct.App.1999). "A court cannot substitute its judgment for that of an agency as to the weight of the evidence on questions of fact unless the agency's findings are clearly erroneous in view of the reliable probative and substantial evidence on the whole record." *Summersell,* 334 S.C. at 363, 513 S.E.2d at 622; *see also Rodney v. Michelin Tire Corp.,* 320 S.C. 515, 466 S.E.2d 357 (1996). "Substantial evidence is not a mere scintil-

la of evidence, nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency reached in order to justify its action." *Nelson,* 364 S.C. at 519, 613 S.E.2d at 547; *see also Palmetto Alliance, Inc. v. South Carolina Public Serv. Comm'n,* 282 S.C. 430, 432, 319 S.E.2d 695, 696 (1984) (declaring substantial evidence is something less than weight of evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence). The circuit court essentially sits as an appellate court in reviewing an administrative agency's final decision for alleged errors. *Kiawah Resort Assocs. v. South Carolina Tax Comm'n,* 318 S.C. 502, 458 S.E.2d 542 (1995); *Nelson,* 364 S.C. at 519, 613 S.E.2d at 547.

## *LAW/ANALYSIS*

The issue in this case is whether the circuit court erred in finding Trooper Manley properly requested a blood test despite the absence of any opinion by licensed medical personnel that Peake was unable to provide a breath sample as required by the implied consent statute. We find no substantial evidence establishing Trooper Manley's compliance with the procedure mandated in section 56–5–2950(a).

## I. The Implied Consent Statute

 Being licensed to operate a motor vehicle on the public highways of this state is not a property right, but is merely a privilege subject to reasonable regulations under the police power in the interest of the public safety and welfare. *State v. Collins,* 253 S.C. 358, 170 S.E.2d 667 (1969); *Summersell v. South Carolina Dep't of Public Safety,* 334 S.C. 357, 366, 513 S.E.2d 619, 624 (Ct.App.1999), *vacated in part on other grounds,* 337 S.C. 19, 522 S.E.2d 144 (1999). The privilege may be revoked or suspended for any cause relating to public safety, but it cannot be revoked arbitrarily or capriciously. *Taylor v. South Carolina Dep't of Motor,* 368 S.C. 33, 36, 627 S.E.2d 751, 753 (Ct.App.2006) *cert. granted; Sponar v. South Carolina Dep't of Pub. Safety,* 361 S.C. 35, 39, 603 S.E.2d 412, 415 (Ct.App.2004). "As part of this

privilege, individuals operating motor vehicles implicitly consent to chemical tests of their breath, blood, or urine to determine whether they are under the influence of drugs or alcohol." *Taylor*, 368 S.C. at 36–37, 627 S.E.2d at 753. S.C.Code Ann. § 56–5–2950 (2006).

Section 56–5–2950(a) states in pertinent part:

A person who drives a motor vehicle in this State is considered to have given consent to chemical tests of his breath, blood, or urine for the purpose of determining the presence of alcohol or drugs or the combination of alcohol and drugs if arrested for an offense arising out of acts alleged to have been committed while the person was driving a motor vehicle while under the influence of alcohol, drugs, or a combination of alcohol and drugs. A breath test must be administered at the direction of a law enforcement officer who has arrested a person for driving a motor vehicle in this State while under the influence of alcohol, drugs, or a combination of alcohol and drugs. **At the direction of the arresting officer, the person first must be offered a breath test to determine the person's alcohol concentration. If the person is physically unable to provide an acceptable breath sample because he has an injured mouth, is unconscious or dead, or for any other reason considered acceptable by the licensed medical personnel, the arresting officer may request a blood sample to be taken.**

. . .

No test may be administered or samples obtained unless the person has been informed in writing that:

(1) he does not have to take the test or give the samples, but that his privilege to drive must be suspended or denied for at least ninety days if he refuses to submit to the tests and that his refusal may be used against him in court;

(2) his privilege to drive must be suspended for at least thirty days if he takes the tests or gives the samples and has an alcohol concentration of fifteen one-hundredths of one percent or more;

(3) he has the right to have a qualified person of his own choosing conduct additional independent tests at his expense;

(4) he has the right to request an administrative hearing within thirty days of the issuance of the notice of suspension; and

(5) if he does not request an administrative hearing or if his suspension is upheld at the administrative hearing, he must enroll in an Alcohol and Drug Safety Action Program.

(emphasis added).

Under section 56–5–2951(A), the Department of Motor Vehicles must suspend the license of anyone who drives a motor vehicle and refuses to submit to a test provided for in section 56–5–2950 or who takes the test and registers an alcohol concentration of at least fifteen percent. A person issued a notice of suspension may request an administrative hearing within thirty days. S.C.Code Ann. § 56–5–2951(B)(2) (2006).

Section 56–5–2951(F) mandates "the scope of the administrative hearing must be limited to whether the person: (1) was lawfully arrested or detained; (2) was advised in writing of the rights enumerated in Section 56–5–2950; [or] (3) refused to submit to a test pursuant to Section 56–5–2950...." "The gravamen of the administrative hearing is a determination of the efficacy and applicability of the implied consent law. The query is: did the person violate the implied consent law." *South Carolina Dep't of Motor Vehicles v. Nelson,* 364 S.C. 514, 525, 613 S.E.2d 544, 550 (Ct.App.2005).

## II. Rules of Statutory Construction

 The primary rule of statutory construction is to ascertain and give effect to the intent of legislature. *Joiner v. Rivas,* 342 S.C. 102, 108, 536 S.E.2d 372, 375 (2000); *Shealy v. Doe,* 370 S.C. 194, 199, 634 S.E.2d 45, 48 (Ct.App.2006); *City of Camden v. Brassell,* 326 S.C. 556, 560, 486 S.E.2d 492, 494 (Ct.App.1997). The first inquiry is whether the statute's meaning is clear on its face. *Wade v. Berkeley County,* 348 S.C. 224, 229, 559 S.E.2d 586, 588 (2002); *Eagle Container Co., L.L.C. v. County of Newberry,* 366 S.C. 611, 622, 622 S.E.2d 733, 738 (Ct.App.2005). With any question regarding statuto-

ry construction and application, the court must always look to legislative intent as determined from the plain language of the statute. *State v. Scott,* 351 S.C. 584, 588, 571 S.E.2d 700, 702 (2002); *State v. Frey,* 362 S.C. 511, 516, 608 S.E.2d 874, 877 (Ct.App.2005); *State v. Morgan,* 352 S.C. 359, 365–66, 574 S.E.2d 203, 206 (Ct.App.2002).

When a statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed, and this court has no right to impose another meaning. *Catawba Indian Tribe of South Carolina v. State,* 372 S.C. 519, 525, 642 S.E.2d 751, 754 (2007); *Vaughn v. Bernhardt,* 345 S.C. 196, 198, 547 S.E.2d 869, 870 (2001). "[T]he words of the statute must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's operation." *Mun. Ass'n of South Carolina v. AT&T Commc'n of Southern States, Inc.,* 361 S.C. 576, 580, 606 S.E.2d 468, 470 (2004); *see also Miller v. Doe,* 312 S.C. 444, 447, 441 S.E.2d 319, 321 (1994) ("In determining the meaning of a statute, the terms used therein must be taken in their ordinary and popular meaning.").

The legislature's intent should be derived primarily from the plain language of the statute. *Jones v. State Farm Mut. Auto. Ins. Co.,* 364 S.C. 222, 230, 612 S.E.2d 719, 723 (Ct.App.2005) (citing *State v. Landis,* 362 S.C. 97, 606 S.E.2d 503 (Ct.App.2004)). The text of a statute is considered the best evidence of the legislative intent or will. *Jones,* 364 S.C. at 231, 612 S.E.2d at 724 (citing *Bayle v. South Carolina Dep't of Transp.,* 344 S.C. 115, 122, 542 S.E.2d 736, 740 (Ct.App.2001)). The language must be read to harmonize with its subject matter and in accord with its general purpose. *Jones,* 364 S.C. at 230, 612 S.E.2d at 723 (citing *Hitachi Data Sys. v. Leatherman,* 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992)). The court's primary function in interpreting a statute is to determine the intent of the General Assembly. *Smith v. South Carolina Ins. Co.,* 350 S.C. 82, 87, 564 S.E.2d 358, 361 (Ct.App.2002). "Once the legislature has made [a] choice, there is no room for the courts to impose a different judgment based upon their own notions of public policy." *South Car-*

*olina Farm Bureau Mut. Ins. Co. v. Mumford,* 299 S.C. 14, 19, 382 S.E.2d 11, 14 (Ct.App.1989).

If the language of an act creates doubt or uncertainty as to legislative intent, the construing court may search for that intent beyond the borders of the act itself. *State v. Morgan,* 352 S.C. 359, 367, 574 S.E.2d 203, 207 (Ct.App.2002). "Statutes, as a whole, must receive practical, reasonable, and fair interpretation, consonant with the purpose, design, and policy of lawmakers." *Collins Music Co., Inc. v. IGT,* 365 S.C. 544, 550, 619 S.E.2d 1, 3 (Ct.App.2005) (quoting *TNS Mills, Inc. v. South Carolina Dep't of Revenue,* 331 S.C. 611, 624, 503 S.E.2d 471, 478 (1998)). Courts will reject statutory interpretations that lead to results so plainly absurd they could not have been intended by the legislature or that defeat the plain legislative intention. *Jones,* 364 S.C. at 232, 612 S.E.2d at 724 (citing *Unisun Ins. Co. v. Schmidt,* 339 S.C. 362, 368, 529 S.E.2d 280, 283 (2000)); *Kiriakides v. United Artists Communications, Inc.,* 312 S.C. 271, 275, 440 S.E.2d 364, 366 (1994)). A court should not consider a particular clause in a statute in isolation, but should read it in conjunction with the purpose of the entire statute and the policy of the law. *Hinton v. South Carolina Dep't of Prob., Parole, and Pardon Servs.,* 357 S.C. 327, 333, 592 S.E.2d 335, 338 (Ct.App.2004); *Doe v. Roe,* 353 S.C. 576, 580, 578 S.E.2d 733, 735–36 (Ct.App.2003).

## III. Compliance with Section 56–5–2950(a)

The plain language of section 56–5–2950(a) permits an arresting officer to request a blood sample but unambiguously limits this to situations where a person is physically unable to provide a breath sample due to an injured mouth, unconsciousness or death, or for any other reason considered acceptable by the licensed medical personnel. In the case at bar, the Department has not asserted Peake had an injured mouth or was unconscious. Therefore, the Department was required under the implied consent statute to show Peake was physically unable to give an acceptable breath sample for a reason found acceptable by licensed medical personnel.

In *State v. Stacy,* 315 S.C. 105, 431 S.E.2d 640 (Ct.App.1993) this court held the state complied with the licensed medical personnel determination requirement of section 56–5–2950(a).

Stacy led police on a high speed chase that ended in a crash killing one person and injuring several others. He appealed his convictions for two felony DUI counts and failure to stop for a police vehicle arguing his blood sample should have been suppressed because the State had not complied with section 56–5–2950(a).

Reading the statute as a whole, this court held "the statute requires a licensed physician, licensed registered nurse, or other medical personnel trained to take blood samples ... to determine whether an acceptable reason exists for finding that a person is unable to provide an acceptable breath sample." *Id.* at 107, 431 S.E.2d at 641; (citing *State v. Baker,* 310 S.C. 510, 427 S.E.2d 670 (1993)). The trained medical person who drew the blood testified Stacy was unable to provide a breath sample because he had not yet been treated and could not be transported to the law enforcement center. Because the evidence established the medical person considered this an acceptable reason, we found the statute permitted the taking of a blood sample without first offering a breath test. *Id.*

This court considered compliance with section 56–5–2950(a) and suppression of blood test results in *City of Columbia v. Moore,* 318 S.C. 292, 457 S.E.2d 346 (Ct.App.1995). Moore was involved in a car accident, placed under arrest at the scene, and transported to the hospital in full spinal precautions. The arresting officer testified he ordered the blood sample after being informed Moore could be in the hospital all night. Finding the City failed to present any evidence of compliance with the procedure set forth in section 56–5–2950(a), this court noted "it is undisputed Moore did not have an injury to the mouth and was conscious at all times. Therefore, the City was required to present evidence Moore was physically unable to give an acceptable breath sample for a reason found acceptable by licensed medical personnel." *Id.* at 295, 457 S.E.2d at 347.

The City alleged the arresting officer's belief Moore would remain at the hospital a long time, coupled with the circumstances of his transport, provided a sufficient basis to conclude Moore was physically unable to give a breath sample. This court answered "[h]owever reasonable these conclusions may

be under the circumstances, they are legally insufficient." *Id.* We explicated:

> To allow the arresting officer to make the determination that a person is physically unable to give an acceptable breath sample, absent an injured mouth, unconsciousness, or death, is a relaxation of the plain requirement of the statute, and would allow the substitution of the officer's judgment for that of licensed medical personnel.

*Id.* at 295, 457 S.E.2d at 348. The City further averred Moore consented to the taking of a blood sample, but we elucidated:

> [A driver's implied] consent is only to chemical tests under the procedure plainly set forth in the statute. The penalty for refusal to submit to testing is the administrative loss of license for ninety (90) days. .... In view of this statute, it would be pure legal fiction to infer Moore's 'consent' at the hospital was a voluntary relinquishment of his right to require compliance with the statute as written.

*Id.*

Although this court acknowledged the inability to leave a medical facility **could** provide a legally sufficient basis to conclude a person was physically incapable of providing a breath sample, we required "the evidence **must** establish the reason a blood test was ordered in lieu of a breath sample is for a reason found acceptable by licensed medical personnel." *Id.* (emphasis added).

In *State v. Kimbrell*, 326 S.C. 344, 481 S.E.2d 456 (Ct.App. 1997), this court again found noncompliance with section 56-5-2950. Kimbrell was involved in a one car accident and taken to the hospital. As she was leaving the hospital, the responding officer asked her to submit to a blood test. The defendant's husband testified she had no injury to her mouth which prevented giving a breath sample. The officer told the court she had a small amount of blood in her teeth. Kimbrell consented to the blood test. The officer did not offer or discuss a breath test with Kimbrell, ask about the condition of her mouth, or attempt to determine the extent of any injury. Accordingly, the test results were suppressed because the record lacked sufficient evidence to support the officer's decision not to offer a breath test. We inculcated:

Unlike a breath test, the blood test is physically invasive. By enacting the implied consent statute, the legislature clearly intended to protect against this invasion where it is used simply as a convenience to the arresting officer, absent the agreement of the accused. There can be no valid agreement where the accused is not advised of his or her right to a breath test instead of a blood test.

*Id.,* 326 S.C. at 348, 481 S.E.2d at 458–59; *see also Taylor v. South Carolina Dept. of Motor Vehicles,* 368 S.C. 33, 627 S.E.2d 751 (Ct.App.2006) *cert. granted* (explaining implied consent laws attempt to balance the interest of the State in maintaining safe highways with the interest of the individual in maintaining personal autonomy free from arbitrary or overbearing state action). Relying heavily on the precedent of *Moore,* we determined "the plain meaning of the statute requires the arresting officer to offer a breath test, absent a valid determination that the defendant is physically unable to give an acceptable breath sample." *Id.* at 348, 481 S.E.2d at 459.

In *State v. Long,* 363 S.C. 360, 610 S.E.2d 809 (2005), our supreme court highlighted the requirements of section 56–5–2950 in order to distinguish section 56–5–2946. When the implied consent laws were rewritten by 1998 Act No. 434, section 7, section 56–5–2946, entitled "Submission to testing for alcohol or drugs," was created and applies only to persons believed to have committed Felony DUI. The court found section 56–5–2946 removed the general requirements that an officer must first offer a breath test or get a medical opinion a breath test is not possible before ordering a blood test. While hospitalized following a single car accident which killed a passenger, a blood sample was drawn from Long at the request of an officer. Long objected to the introduction of the test results at trial because he had not been offered a breath test and no licensed medical personnel determined he was unable to provide a breath sample. A study of the language of section 56–2–2946 led the court to conclude:

[The first] two paragraphs essentially alter the procedural prerequisites which must be met under § 56–5–2950 before an officer may order a blood test for a Felony DUI suspect. Under § 56–5–2946, the officer need no longer offer a breath test as the first option, nor must he obtain a medical

opinion that such a test is not feasible before ordering a test or sample.

*Id.* at 363, 610 S.E.2d at 811. *See also State v. Cuevas,* 365 S.C. 198, 616 S.E.2d 718 (Ct.App.2005) (finding under section 56–5–2950(a), unlike section 56–5–2946, arresting officer must first offer breath test).

In the case *sub judice,* Peake was not suspected of felony DUI and the parties concede no breath test was first offered. Apodictically, under section 56–5–2950(a), Trooper Manley could only have requested a blood sample if Peake was physically unable to provide a breath sample due to an injured mouth, unconsciousness, death, or for any other reason considered acceptable by the licensed medical personnel. The record contains no substantial evidence supporting any of these exceptions. Indeed, the uncontested facts show the administrative hearing officer and the circuit court relied only on an unsubstantiated reason considered acceptable by Trooper Manley.

The Department asserts "a reasonable mind could conclude ... that [Peake] was 'unable to give a breath sample.'" In *Moore,* we established this conclusion, "however reasonable," was legally insufficient because section 56–5–2950(a) plainly establishes the determination of the licensed medical personnel is the standard.

The Department additionally contends that because a person cannot be transported from a medical facility to the locale of a DataMaster until released by licensed medical personnel, the statutory requirement of a medical opinion is necessarily satisfied "every single time a motorist is taken to a medical facility for treatment and is not soon thereafter discharged." The Department limits application of this notion to administrative hearings. We are unaware of any statutory or jurisprudential basis for this proposition. Although this court in *Moore* held the inability to leave a medical facility could form a legally sufficient basis for ordering a blood test, we expounded the record must show this determination is based on the opinion of licensed medical personnel.

Section 56–5–2950(a) clearly articulates the statutory structure for chemical testing to which drivers impliedly consent. The record is absolutely devoid of any evidence showing

Trooper Manley met the statutory requirements before requesting a blood test, therefore we find the decisions of the administrative hearing officer and the circuit court are clearly erroneous.

## CONCLUSION

Although the administrative hearing officer correctly concluded Peake was lawfully arrested, advised of his section 56-5-2950 rights, and refused to submit to a test, no substantial evidence shows the Department honored these rights in accordance with statutory provisions. Therefore, the findings of the administrative hearing officer and the circuit court judge are

**REVERSED.**

SHORT and WILLIAMS, JJ., concur.