693 S.E.2d 33

SOUTHEAST TOYOTA DISTRIBUTORS, LLC, Appellant,

v.

JIM HUDSON SUPERSTORE, INC., d/b/a Jim Hudson Toyota/Scion, Dyer, Inc., d/b/a Dick Dyer Toyota, and Anderson Columbia Acquisition, LLC, d/b/a Toyota Center, Defendants,

of whom Anderson Columbia Acquisition, LLC, d/b/a Toyota Center is, Appellant,

and Jim Hudson Superstore, Inc., d/b/a Jim Hudson Toyota/Scion is, Respondent.

No. 4666.

Court of Appeals of South Carolina.

Heard Feb. 2, 2010.

Decided March 31, 2010.

Rehearing Denied May 27, 2010.

C. Mitchell Brown, Steven A. McKelvey, Jr., and Thad H. Westbrook, of Columbia, for Appellant Southeast Toyota Distributors, LLC.

John J. Pringle, Jr. and Shaun C. Blake, of Columbia, for Appellant Anderson Columbia Acquisition, LLC.

Manton M. Grier and Sarah P. Spruill, of Columbia, for Respondent.

GEATHERS, J.

Appellant Southeast Toyota Distributors, LLC (SET), brought this declaratory judgment action against Respondent Jim Hudson Superstore, Inc., d/b/a Jim Hudson Toyota/Scion (Hudson), Dyer, Inc., d/b/a Dick Dyer Toyota (Dyer), and Appellant Anderson Columbia Acquisition, LLC, d/b/a/ Toyota Center (Anderson) to determine whether the relocation of the Toyota Center dealership in Lexington County is exempt from protest pursuant to S.C.Code Ann. § 56–15–46(C) (2006).[1] Hudson and Dyer filed counterclaims asserting protests to the proposed relocation under subsection (B) of the statute. SET and Hudson then filed cross-motions for summary judgment on the exemption issue. The circuit court granted Hudson's summary judgment motion and denied SET's summary judgment motion. SET and Anderson challenge the circuit court's order on the ground that subsection (C)(3) of the statute,

---

1. Section 56–15–46(B) allows an existing dealership to petition the circuit court to enjoin the establishment of a new or relocated dealership within a ten-mile radius of the existing dealership. Subsection (C) sets forth three exemptions from the statute. Although SET named Anderson as a defendant in this declaratory judgment action, these two parties share the same position with respect to the exemption status of the Toyota Center dealership's relocation.

which provides an exemption from protest, applies to the Toyota Center dealership despite a change in its ownership.[2] We reverse.

## FACTS/PROCEDURAL HISTORY

On May 30, 2006, Anderson entered into an agreement with Rish–Corey Automotive, Inc. to purchase the assets of the Toyota Center dealership. Toyota Center has been located at 1640 Airport Boulevard in West Columbia since 1972. Anderson also entered into a dealer agreement with SET, the authorized distributor of Toyota vehicles, parts, and accessories for South Carolina, North Carolina, Georgia, Florida, and Alabama. Because of the inadequacy of the existing facility at 1640 Airport Boulevard, Anderson's dealer agreement with SET required Anderson to construct and occupy a new facility at a site to be approved by SET. SET later approved Anderson's choice of the site at 2136 Sunset Boulevard in West Columbia, less than three miles away from the facility at 1640 Airport Boulevard, and sent letters to Hudson and Dyer informing them of the proposed relocation of the Toyota Center dealership.

SET subsequently filed this declaratory judgment action against Hudson, Dyer, and Anderson, seeking a determination of whether the proposed relocation is exempt from protest pursuant to section 56–15–46(C). Hudson and Dyer filed counterclaims asserting a protest to the proposed relocation pursuant to subsection (B) of the statute. SET and Hudson then filed cross-motions for summary judgment on the exemption question. The circuit court granted Hudson's summary judgment motion and denied SET's summary judgment motion. SET filed a motion to alter or amend pursuant to Rule 59(e), SCRCP. However, the circuit court denied the motion, and this appeal followed.

---

2. In view of our disposition of this issue, we decline to address the remaining issues on appeal. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating that if an appellate court's ruling on a particular issue is dispositive of an appeal, rulings on remaining issues are unnecessary).

## ISSUE ON APPEAL

Did the circuit court err in concluding that the relocation of the Toyota Center dealership is not exempt from protest pursuant to S.C.Code Ann. § 56–15–46(C)(3) (2006)?

## STANDARD OF REVIEW

On appeal from the grant of a summary judgment motion, this Court applies the same standard as that required for the circuit court under Rule 56(c), SCRCP. *Brockbank v. Best Capital Corp.*, 341 S.C. 372, 379, 534 S.E.2d 688, 692 (2000). Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP; *Adamson v. Richland County Sch. Dist. One*, 332 S.C. 121, 124, 503 S.E.2d 752, 753 (Ct.App.1998). "Determining the proper interpretation of a statute is a question of law, and this Court reviews questions of law de novo." *Town of Summerville v. City of N. Charleston*, 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008).

## LAW/ANALYSIS

Section 56–15–46(B) of the South Carolina Code (2006) allows an existing dealership to petition the circuit court to enjoin the establishment of a new or relocated dealership within a ten-mile radius of the existing dealership.[3] Subsection (B) reads in pertinent part as follows:

If a franchisor intends to establish a new dealership or to relocate a current dealership *within a ten-mile radius* of an existing dealership, then that existing dealership may petition the court, within sixty days of the receipt of the notice, to enjoin or prohibit the establishment of the new or relocated dealership within a ten-mile radius of the existing dealership. The court shall enjoin or prohibit the establishment of the new or relocated dealership within a ten-mile radius of the protesting dealership unless the franchisor shows by a preponderance of the evidence that the existing dealership

---

3. In the year 2000, the legislature added section 56–15–46 to Chapter 15 of Title 56 of the South Carolina Code. *See* Act No. 287, § 2, 2000 S.C. Acts 2041, 2045–47.

is not providing adequate representation of the line-make motor vehicle and that the new or relocated dealership is necessary to provide the public with reliable and convenient sales and service *within that area.*

S.C.Code Ann. § 56–15–46(B) (2006) (emphases added).

However, subsection (C) of the statute designates the following three exemptions from the protest procedure set forth in subsection (B):

(1) [the] addition of a new dealership at a location that is within a three-mile radius of a former dealership of the same line make and that has been closed for less than two years;

(2) [the] relocation of an existing dealership to a new location that is further away from the protesting dealer's location than the relocated dealer's previous location; or

(3) [the] relocation of an *existing dealership* to a new location that is *within* a *three-mile radius* of the dealership's *current location,* when it has been at the current location at least *ten years.*

S.C.Code Ann. § 56–15–46(C) (2006) (emphases added).

■ SET and Anderson assign error to the circuit court's ruling that the relocation of the Toyota Center dealership is not exempt from protest pursuant to S.C.Code Ann. § 56–15–46(C)(3) because Anderson is a new dealer. Specifically, Anderson challenges the circuit court's conclusion that because Anderson is a new dealer, Toyota Center is no longer an "existing dealership," but is a "new dealership" for purposes of subsection (C) of the statute. The circuit court reached its conclusion based on the following rationale:

The Court is called to determine whether Anderson is an "existing dealership" that has been at its current location at least ten years within the meaning of S.C.Code Ann. § 56–15–46(C)(3) [sic]. A dealership necessarily refers to a dealer, and when the dealer is changed, so is the dealership.

Anderson and Rish–Corey are separate dealers and separate persons for purposes of the Dealer Statute. As reflected in its dealer agreement with SET and TMS, Anderson was a new franchisee in 2006. It is true that the businesses owned by Rish–Corey and Anderson share a location and operate under the same doing business as

designations ("Toyota Center" and "Scion Center"); however, that does not change the underlying identity of the dealers or create one dealership for purposes of the Dealer Statute.

Accordingly, the Court concludes that Anderson was a new dealership when it purchased the assets of Rish–Corey in 2006. Although Rish–Corey would have been entitled to assert the exemption found in S.C.Code Ann. § 56–15–46(C)(3), Anderson is not at this time.

Anderson essentially argues that the existence of a dealership is not extinguished for purposes of the exemption in subsection (C)(3) simply because its owner has changed. Similarly, SET argues that when read consistent with the principles of statutory construction, the application of the exemption in subsection (C)(3) depends on *where* consumers have been served and *how long* they have been served there, not on the identity of the dealership's owner. We agree.

 " 'Statutes, as a whole, must receive practical, reasonable, and fair interpretation, consonant with the purpose, design, and policy of lawmakers.' " *Peake v. S.C. Dep't of Motor Vehicles*, 375 S.C. 589, 599, 654 S.E.2d 284, 289 (Ct.App. 2007) (quoting *Collins Music Co., Inc. v. IGT*, 365 S.C. 544, 550, 619 S.E.2d 1, 3 (Ct.App.2005)). "A court should not consider a particular clause in a statute in isolation, but should read it in conjunction with the purpose of the entire statute and the policy of the law." *Id.* at 599, 654 S.E.2d at 290 (citing *Hinton v. S.C. Dep't of Prob., Parole, and Pardon Servs.*, 357 S.C. 327, 592 S.E.2d 335 (Ct.App.2004)).

Several states, including South Carolina, have enacted "relevant market area" laws that are designed to protect dealerships from destructive intrabrand competition. *See* Act No. 287, § 2, 2000 S.C. Acts 2041, 2045–47 (enacting key provisions of South Carolina's "relevant market area" law by adding S.C.Code Ann. § 56–15–46 to Chapter 15 of Title 56); *Heritage Jeep–Eagle, Inc. v. Chrysler Corp.*, 39 Mass.App.Ct. 254, 655 N.E.2d 140, 143–45 (1995); *see also General Motors Corp. v. State Motor Vehicle Review Bd.*, 224 Ill.2d 1, 308 Ill.Dec. 611, 862 N.E.2d 209, 216 (2007) (citing 815 Ill. Comp. Stat. 710/2(q) (2004), which defines "relevant market area" in legislation allowing protests to the addition of a new franchise

within ten miles of an existing franchise). The focus in this type of legislation is on the degree of competition among dealerships. *See Heritage Jeep–Eagle,* 655 N.E.2d at 143–45 (stating that the focus of Massachusetts' "relevant market area" law is on the degree of competition among franchisees).

■■ South Carolina's "relevant market area" law clearly focuses on the introduction of new competition for an existing dealership, and the identity of the owner or operator of the new competitor has no relevance to this analysis. The new competition is unavoidably related to the geography of the area, i.e., the location of another business selling the same "line-make." Key terms in section 56–15–46, such as "market area," "ten-mile radius," "distance," and "location," clearly indicate that the legislature viewed the effect of geography on an existing dealership's customer base as the controlling factor in determining whether the addition or relocation of a dealership to an area is exempt from protest. When the dealership is the same geographically, even if its ownership is new, there is no new competition for purposes of section 56–15–46. Therefore, the status of a dealership as "existing" for purposes of section 56–15–46(C)(3) is not altered by a change in ownership.[4]

■ As Hudson correctly asserts, certain provisions of Act No. 287, 2000 S.C. Acts 2041, employ the terms "dealer" and "dealership" interchangeably.[5] However, in section 56–15–46(C)(3), there is no true indication that the legislature intended to restrict the ownership of a dealership in the manner

---

4. Hudson cites *Walton v. Mazda of Rock Hill,* 376 S.C. 301, 657 S.E.2d 67 (Ct.App.2008) for the proposition that the purchaser of a dealership's assets is a new and distinct business. However, *Walton* did not involve the interpretation of Act No. 287, 2000 S.C. Acts 2041. Rather, *Walton* dealt with successor liability for an automobile warranty. 376 S.C. at 305–08, 657 S.E.2d at 69–70. In any event, whether a new and distinct business entity has purchased a dealership's assets has no significance in examining the impact of the dealership's physical location on a competing dealership.

5. *See, e.g.,* S.C.Code Ann. § 56–15–46(A) (2006) (notice provided by certified mail to existing "dealership"); § 56–15–46(B) (existing "dealership" may petition the court); § 56–15–46(C)(2) ("relocation of an existing dealership to a new location that is further away from the protesting dealer's location than the relocated dealer's previous location").

proposed by Hudson. *See Kiriakides v. United Artists Communications, Inc.*, 312 S.C. 271, 275, 440 S.E.2d 364, 366 (1994) (holding that however plain the ordinary meaning of the words used in a statute may be, the courts will reject that meaning when to accept it would defeat the plain legislative intention). Viewing the provisions of Act No. 287 as a whole, the term "dealership" in section 56–15–46(C) refers to the business operation itself and not to the identity of the business owner; and, the introduction of new competition in the relevant market area depends on the operation of the business and not on the owner's identity. *See Foothills Brewing Concern, Inc. v. City of Greenville*, 377 S.C. 355, 363, 660 S.E.2d 264, 268 (2008) ("When construing statutory language, the statute must be read as a whole, and sections which are part of the same general statutory law must be construed together and each one given effect."); *Peake*, 375 S.C. at 599, 654 S.E.2d at 290 (holding that a court should not consider a particular clause in a statute in isolation, but should read it in conjunction with the purpose of the entire statute).

The protest exemption in subsection (C)(1) provides a good illustration of the legislature's focus on changes in competition: "This section does not apply to the ... addition of a *new* dealership at a location that is within a three-mile radius of a *former* dealership of the same line make and ... has been closed for less than two years." (emphases added). This provision exempts a new dealership when its location is close to the location of a recently closed dealership—the idea being that there is *no net increase* in competition. In *Heritage Jeep–Eagle*, the Appeals Court of Massachusetts cited the language of a comparable provision in Massachusetts' relevant market area law to support its conclusion that the statute in general concerns itself with *additional competition* for dealerships already existing in the relevant market area. 655 N.E.2d at 144 n. 8.

■ Hudson argues that section 56–15–46 protects South Carolina consumers and dealerships from aggressive practices by distributors and manufacturers and from excessive intrabrand competition. We agree. However, this purpose can be served by applying the exemptions in section 56–15–46(C) according to the geographical relationship between the businesses involved, as was intended by the legislature.

## CONCLUSION

Accordingly, the circuit court's order is **REVERSED.**

HUFF, J., and CURETON, A.J., concur.