741 S.E.2d 42

**Krystal CHISOLM, Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF
MOTOR VEHICLES, Respondent.**

Appellate Case No. 2011–196890.

No. 5107.

Court of Appeals of South Carolina.

Heard Nov. 13, 2012.
Decided March 27, 2013.

594

C. Rauch Wise, of Greenwood, for Appellant.

Frank L. Valenta Jr., Linda Annette Grice, and Philip S. Porter, all of the South Carolina Department of Motor Vehicles, of Blythewood, for Respondent.

PIEPER, J.

Krystal Chisolm appeals the administrative suspension of her driver's license. On appeal, Chisolm argues the Administrative Law Court (ALC) erred by (1) interpreting the term "refusal" in section 56–5–2951 of the South Carolina Code (Supp.2012) in accordance with the State Law Enforcement Division's (SLED) policies and procedures, and (2) finding she refused the breath test. We reverse.

## FACTS

On May 19, 2010, Officer Dyar Archibald arrested Chisolm for driving under the influence. Officer Archibald pulled Chisolm over because he had received a call that Chisolm's cousin, a passenger in her vehicle, was "banging on cars." While speaking with Chisolm's cousin, Officer Archibald no-

ticed that Chisolm seemed to be impaired. Chisolm took three field sobriety tests: the one-legged stand, the walk and turn, and the horizontal gaze nystagmus test. Officer Archibald testified that Chisolm failed the one-legged stand, but that he did not consider the walk and turn a failure. Chisolm also failed the horizontal gaze nystagmus test which, according to Officer Archibald, indicated that Chisolm had alcohol in her system. However, this test did not measure the amount of alcohol in Chisolm's system.

Once Officer Archibald transported Chisolm to the police station, he administered a breath test. Chisolm blew into the DataMaster, the breath test instrument, for approximately one minute and fifty-three seconds. Officer Archibald testified that there was a steady tone while Chisolm blew, meaning air was going into the instrument. However, Officer Archibald also testified that the instrument "just didn't read it." No evidence was presented that the DataMaster's failure to register Chisolm's breath sample resulted from her own fault by faking or thwarting the test, being uncooperative, acting unruly, delaying the administration of the test, ingesting prohibited substances during the observation period, failing to cooperate with the officer's instructions, or behaving in any manner that would amount to a constructive refusal. Even though Officer Archibald testified that Chisolm blew into the instrument and gave a steady tone, he also testified that Chisolm did not give an "accurate sample," which he considered to be a refusal. As a result, Officer Archibald reported that Chisolm refused to submit to a breath test. Officer Archibald asked Chisolm to take the test again and Chisolm agreed. However, according to Officer Archibald, the DataMaster would not let Chisolm take the test again because it registered an inadequate sample after the first blow. Because the records indicated Chisolm refused the breath test, the South Carolina Department of Motor Vehicles (the Department) suspended her driver's license.

Subsequently, Chisolm requested an administrative hearing before the South Carolina Office of Motor Vehicle Hearings (OMVH) to challenge her license suspension. Chisolm argued her suspension was unjustified because (1) there was no probable cause to arrest, and (2) she never refused to give the sample required by law and provided an adequate test sam-

ple.[1] The hearing officer sustained Chisolm's license suspension, finding that Chisolm refused the breath test because Chisolm's breath test results did not provide a registerable sample.

Chisolm appealed her license suspension to the ALC. The ALC affirmed, solely relying on SLED Policy 8.12.5(F)(4)(i) that provides, "[a] refusal to submit to a breath test can occur in any of the following ways: ... i. The subject ... does not blow an adequate sample, as determined by the instrument." This appeal followed.

## STANDARD OF REVIEW

"The [OMVH] is authorized to hear contested cases from the Department." *S.C. Dep't of Motor Vehicles v. McCarson,* 391 S.C. 136, 144, 705 S.E.2d 425, 429 (2011). As a result, the OMVH is an agency pursuant to the Administrative Procedures Act (APA). *Id.* Appeals from the OMVH are taken by the ALC. *Id.* When reviewing a decision of the ALC, section 1–23–610(B) of the South Carolina Code (Supp.2012), governs this court's standard of review, providing:

> The review of the administrative law judge's order must be confined to the record. The court may not substitute its judgment for the judgment of the administrative law judge as to the weight of the evidence on questions of fact. The court of appeals may affirm the decision or remand the case for further proceedings; or, it may reverse or modify the decision if the substantive rights of the petitioner have been prejudiced because the finding, conclusion, or decision is:
> (a) in violation of constitutional or statutory provisions;
> (b) in excess of the statutory authority of the agency;
> (c) made upon unlawful procedure;
> (d) affected by other error of law;
> (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
> (f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"Substantial evidence is not a mere scintilla; rather, it is evidence which, considering the record as a whole, would allow

---

1. Chisolm does not raise any issues regarding probable cause to this court on appeal.

reasonable minds to reach the same conclusion as the agency." *Friends of Earth v. Pub. Serv. Comm'n of S.C.*, 387 S.C. 360, 366, 692 S.E.2d 910, 913 (2010).

## LAW/ANALYSIS

■ Chisolm argues the ALC erred in determining a refusal takes place pursuant to section 56–5–2951 when the breath test instrument "determines" a provided sample is inadequate. According to Chisolm, a refusal only takes place when the test subject actually refuses the conscious act of blowing into the instrument, and the ALC erred in interpreting the SLED polices and procedures in a manner that is contrary to section 56–5–2951. Chisolm contends she never "refused" within the meaning of section 56–5–2951; thus, the suspension of her license was unjustified. We reverse.

■ "Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *State v. Jacobs*, 393 S.C. 584, 587, 713 S.E.2d 621, 622 (2011) (quotation marks omitted). This court should give words "their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation." *State v. Sweat*, 386 S.C. 339, 350, 688 S.E.2d 569, 575 (2010) (quotation marks omitted).

■■ "Being licensed to operate a motor vehicle on the public highways of this state is not a property right, but is merely a privilege subject to reasonable regulations under the police power in the interest of the public safety and welfare." *Peake v. S.C. Dep't of Motor Vehicles*, 375 S.C. 589, 595, 654 S.E.2d 284, 288 (Ct.App.2007). "The privilege may be revoked or suspended for any cause relating to public safety, but it cannot be revoked arbitrarily or capriciously." *Id.* "A person who drives a motor vehicle in [South Carolina] is considered to have given consent to chemical tests of his breath...." S.C.Code Ann. § 56–5–2950(A) (Supp.2012). "The Department of Motor Vehicles must suspend the driver's license, permit, or nonresident operating privilege of or deny the issuance of a license or permit to a person who drives a motor vehicle and refuses to submit to [a breath] test...." § 56–5–2951(A).

The requirements for suspension for refusal to consent are: (1) a person (2) operating a motor vehicle (3) in South Carolina (4) be arrested for an offense arising out of acts alleged to have been committed while the person was driving under the influence of alcohol, drugs, or both, and (5) refuse to submit to alcohol and drug testing.

*S.C. Dep't of Motor Vehicles v. Nelson,* 364 S.C. 514, 523, 613 S.E.2d 544, 549 (Ct.App.2005). The legislature gave SLED authority to make policies, procedures, and regulations to administer the provisions of the implied consent statute. *See* S.C.Code Ann. § 56–5–2950(E) & (J) (Supp.2012). Specifically, subsection 56–5–2950(A) states that a "breath test must be administered ... pursuant to SLED policies." § 56–5–2950(A). The burden is on the Department to prove that Chisolm refused the breath test. *See McCarson,* 391 S.C. at 149, 705 S.E.2d at 431 (noting in a license revocation proceeding, the burden of proving that the driver was lawfully arrested or detained for DUI was on the Department).

Prior to determining the meaning of the word "refusal," we note the procedures in conducting a breath test. Pursuant to SLED policies, after the required twenty minute observation period, the officer will prepare the DataMaster instrument for the breath test. SLED Policies & Procedures § 8.12.5(J) & (K) (2009).[2] Thereafter, the officer starts the instrument, and:

The instrument will display, "PLEASE BLOW", at the time for the subject to blow. The test operator will ensure a new mouthpiece is placed on the breath tube, unless a refusal has already occurred. The subject may use the same mouthpiece in the event the test is aborted and must be started again. The subject is given approximately two minutes to provide an acceptable breath sample.... The subject will provide a continuous breath sample, acceptable to the instrument, containing a minimum of approximately one and one half liters. "PLEASE BLOW" will display until an adequate sample is obtained or time expires.

SLED Policies & Procedures § 8.12.5(L)(2)(f)(i).

If an acceptable breath sample is not provided in two minutes, the instrument will display "Did the subject re-

2. SLED's policies and procedures are available at: *http://www.sled.sc. gov/documents/impliedconsent/polproc/8125/200902108125.pdf* (last visited March 15, 2013).

fuse?" When question is prompted, press the touch-screen icon, "Yes" or "No". If "Yes" is answered, the instrument will print "REFUSED" by "SUBJECT SAMPLE", after the final steps of the operational protocol are completed. . . . If "No" is answered, the test will abort and the instrument will print "INCOMPLETE SUBJECT TEST" on the Breath Alcohol Analysis Test Report/Evidence Ticket. An "INCOMPLETE SUBJECT TEST" reading, by itself, is not a refusal situation. *(A "NO" should only be entered if the subject failed to provide an acceptable breath sample through no fault of his/her own.).* In the event of an "INCOMPLETE SUBJECT TEST"; the breath test sequence may be repeated, except the advisement process is not required to be repeated.

SLED Policies & Procedures § 8.12.5(L)(2)(f)(vii) (emphasis added).

The South Carolina Code does not define "refusal." However, SLED's policies and procedures provide several examples of when a refusal can occur. For example, a refusal can occur if the subject refuses to cooperate, delays the administration of the test, ingests prohibited substances during the observation, or intentionally causes the instrument to have an error. SLED Policies & Procedures § 8.12.5(F)(4)(b), (d), (f), & (j). At issue in this case is the SLED policy that defines "refusal" as occurring when a person "does not blow an adequate sample, as determined by the instrument." SLED Policies & Procedures § 8.12.5(F)(4)(i). Thus, for the breath test to be administered "pursuant to SLED policies," as required by section 56–5–2950(A), a subject who blows an inadequate sample "as determined by the instrument" can be deemed by the officer administrating the test to have refused the breath test. *See id.*

Here, the ALC affirmed the suspension of Chisolm's license, finding the record contains evidence that "the machine determined that the breath sample of [Chisolm] was not measurable, and thus inadequate." The ALC further found the "facts of this case conform to the criteria for determining a refusal pursuant to SLED policy 8.12.5, and the Hearing Officer properly found that [Chisolm] refused to submit to a breath test."

A plain reading of the statute at issue, as opposed to the SLED policies and procedures, provides that the Department may suspend a driver's license when a person refuses to submit to a breath test. *See* § 56–5–2951(A) ("The Department of Motor Vehicles must suspend the driver's license, permit, or nonresident operating privilege of or deny the issuance of a license or permit to *a person who* drives a motor vehicle and *refuses to submit* to [a breath] test. . . ." (emphases added)). We also recognize that the legislature authorized SLED to promulgate policies and procedures for *administering* breath tests. *See* § 56–5–2950(A), (E), & (J). *See Ahrens v. State*, 392 S.C. 340, 348–49, 709 S.E.2d 54, 58 (2011) (noting the legislature has the right to vest administrative officers and bodies discretion to promulgate rules and regulations; however, an agency may not make rules and regulations that conflict with or change the statute that confers such authority).

An appellate court may reverse the decision of the ALC if it is affected by an error of law or is "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." *S.C. Dep't of Motor Vehicles v. Blackwell*, 389 S.C. 293, 295, 698 S.E.2d 770, 771 (2010) (quoting S.C.Code Ann. § 1–23–610(B) (Supp.2008)). "Because a license-suspension hearing constitutes a final adjudication of an important interest, we believe the Legislature promulgated section 56–5–2951 in such a way that guards against *an automatic or rote elimination* of this interest." *McCarson*, 391 S.C. at 148, 705 S.E.2d at 431 (emphasis added).

As cited above, SLED policies and procedures include a specific protocol for when the instrument does not register the breath sample. *See* SLED Policies & Procedures § 8.12.5(L)(2)(f)(vii). The DataMaster will display "PLEASE BLOW" until an adequate sample is obtained or time expires. SLED Policies & Procedures § 8.12.5(L)(2)(f). If time expires, the DataMaster will ask the officer whether the subject refused, in which event the officer must answer "Yes" or "No." SLED Policies & Procedures § 8.12.5(L)(2)(f)(vii). A "Yes" will print as a refusal, while a "No" will print "INCOMPLETE SUBJECT TEST." *Id.* The policies and procedures provide that a "No" should be entered only if the subject failed to provide an acceptable breath sample through no fault of his or her own. *Id.* Thus, the failure of a driver to supply a

registerable breath sample does not automatically result in a refusal, as the officer has discretion to determine whether there was a refusal and has the option to conduct a second breath test. Our courts have not been presented with the question of whether a driver's inability to provide a registerable breath sample may result in a "refusal" pursuant to section 56–5–2951; therefore, we look to other jurisdictions for guidance.

We start with the proposition that when the breath test instrument emits a steady tone, the steady tone is an indication that the instrument is receiving a breath sample. *See Kurosak v. Comm'r of Pub. Safety*, 402 N.W.2d 826, 828 (Minn.Ct.App.1987) ("A tone sounds when an adequate sample is blown into the machine."); *Quick v. Com., Dep't of Transp., Bureau of Driver Licensing*, 915 A.2d 1268, 1270 (Pa. Commw.Ct.2007) ("The breath testing instrument emits a steady tone during a continuous breath, but beeps during intermittent breathing."). Other jurisdictions have upheld the suspension of a driver's license based on the subject's refusal to submit to a breath test when, unlike the present case, the driver *failed* to produce a steady tone into the breath instrument. In *Walker v. State*, the officer administering the breath test testified that an air sample flowing into the instrument will generate a steady tone, but that the subject did not blow into the machine as he was instructed, was puffing his cheeks to act like he was blowing, and never made a steady tone. 262 Ga.App. 872, 586 S.E.2d 757, 759 (2003).[3] The officer testified that he did hear a brief "ping" tone, but he never heard a

3. In regards to breath samples, Georgia's implied consent statute requires:

No more than two sequential series of a total of two adequate breath samples each shall be requested by the state; provided, however, that after an initial test in which the instrument indicates an adequate breath sample was given for analysis, any subsequent refusal to give additional breath samples shall not be construed as a refusal for purposes of suspension of a driver's license under Code Sections 40–5–55 and 40–5–67.1. Notwithstanding the above, a refusal to give an adequate sample or samples on any subsequent breath, blood, urine, or other bodily substance test shall not affect the admissibility of the results of any prior samples. An adequate breath sample shall mean a breath sample sufficient to cause the breath-testing instrument to produce a printed alcohol concentration analysis.

Ga.Code Ann. § 40–6–392 (West 2012).

"long constant tone." *Id.* at 759–60. The officer determined that the subject was deliberately failing to provide adequate air for the machine to evaluate, and thus, he registered the subject's failure to properly blow into the machine as a refusal. *Id.* at 760. On appeal, the court affirmed the trial court's determination that the defendant refused a breath test for the failure to properly blow into the breath test instrument, noting that the officer has the discretion to determine whether a subject is faking it. *Id.* at 762.

Likewise, in *State v. Householder*, the Ohio Court of Appeals affirmed the trial court's determination that the invalid breath sample was based on the driver's failure to sufficiently blow into the instrument. 181 Ohio App.3d 269, 908 N.E.2d 987, 992 (2009).[4] The court relied on the officer's testimony

---

4. The Ohio statute on refusing a breath sample provides:

(5)(a) If a law enforcement officer arrests a person for a violation of [the Ohio DUI statutes], the law enforcement officer shall request the person to submit, and the person shall submit, to a chemical test or tests of the person's whole blood, blood serum or plasma, breath, or urine for the purpose of determining the alcohol, drug of abuse, controlled substance, metabolite of a controlled substance, or combination content of the person's whole blood, blood serum or plasma, breath, or urine. A law enforcement officer who makes a request pursuant to this division that a person submit to a chemical test or tests is not required to advise the person of the consequences of submitting to, or refusing to submit to, the test or tests and is not required to give the person the form described in division (B) of section 4511.192 of the Revised Code, but the officer shall advise the person at the time of the arrest that if the person refuses to take a chemical test the officer may employ whatever reasonable means are necessary to ensure that the person submits to a chemical test of the person's whole blood or blood serum or plasma. The officer shall also advise the person at the time of the arrest that the person may have an independent chemical test taken at the person's own expense. Divisions (A)(3) and (4) of this section apply to the administration of a chemical test or tests pursuant to this division.

(b) If a person refuses to submit to a chemical test upon a request made pursuant to division (A)(5)(a) of this section, the law enforcement officer who made the request may employ whatever reasonable means are necessary to ensure that the person submits to a chemical test of the person's whole blood or blood serum or plasma. A law enforcement officer who acts pursuant to this division to ensure that a person submits to a chemical test of the person's whole blood or blood serum or plasma is immune from criminal and civil liability based upon a claim for assault and battery or any other claim for the acts, unless the officer so acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

that if the DataMaster starts beeping, then the driver is not blowing into the machine correctly and not giving an adequate sample. *Id.* at 988–89. The officer also explained that the instrument "went from a steady tone, to a beep, back to a steady tone," indicating that the reason for the invalid sample was a "discontinued blowing pattern." *Id.* at 989.

Similarly, the Oregon Court of Appeals reinstated the revocation of a license based on a refusal, where the hearing officer determined that the subject feigned an inability to take the test. *Gilliam v. Oregon Dep't of Transp.*, 178 Or.App. 267, 36 P.3d 509, 510 (2001). Specifically, the officer testified that he told the subject to blow into the Intoxilyzer machine and generate a steady tone. *Id.* at 509. However, the subject did not generate a steady tone; rather, he would blow and then stop for a second after the tone started. *Id.* Based on this conduct, the officer determined that the subject "did not appear to be trying to blow hard" and that he thought the subject was toying with the machine. *Id.* at 510. Accordingly, the court affirmed the officer's decision to press the button to indicate that the subject refused the test. *Id.* at 510.

In addition, the Missouri Supreme Court undertook an analysis to define "refusal," explaining:

> There is no mysterious meaning to the word "refusal". In the context of the implied consent law, it simply means that an arrestee, after having been requested to take the breathalyzer test, declines to do so of his own volition. Whether the declination is accomplished by verbally saying, "I refuse", or by remaining silent and just not breathing or blowing into the machine, or by vocalizing some sort of qualified or conditional consent or refusal, does not make any difference. The volitional failure to do what is necessary in order that the test can be performed is a refusal.

*Spradling v. Deimeke*, 528 S.W.2d 759, 766 (Mo.1975).[5] A Connecticut court has held that the determination of a refusal is required to be supported by substantial evidence, finding:

---

Ohio Rev.Code Ann. § 4511.191 (West 2012).

**5.** The Missouri implied consent statute provides that if: "a person under arrest, or who has been stopped pursuant to subdivision (2) or (3) of subsection 1 of section 577.020, refuses upon the request of the officer to submit to any test allowed pursuant to section 577.020, then

[W]here it is undisputed that the motorist submitted to the chemical alcohol test, the fact that he failed to provide an adequate breath sample does not automatically constitute refusal within the meaning of [the statute]. Such refusal must be supported by substantial evidence. A conclusory statement by the arresting officer that the driver has failed to provide an adequate breath sample and has, therefore, refused, does not constitute such evidence.

*Bialowas v. Comm'r of Motor Vehicles*, 44 Conn.App. 702, 692 A.2d 834, 841 (1997).[6]

Furthermore, a Pennsylvania court was faced with a set of facts similar to the case at bar. The court was asked to determine if the subject refused the breath test after she attempted to blow into the machine and the machine did not register a sample; she also wanted to take the test again. *See Bomba v. Com., Dep't of Transp., Bureau of Driver Licensing*, 28 A.3d 946, 948 (Pa.Commw.Ct.2011).[7] In *Bomba*, the officer administrating the breath test, Officer Lawniczak, testified that the subject, Heather Bomba, "attempted to give one breath sample" that "was insufficient." *Id.* According to Officer Lawniczak, the breathalyzer machine "allows a two-minute window to provide an adequate breath sample; if an

---

evidence of the refusal shall be admissible." Mo. Ann. Stat. § 577.041 (West 2012).

6. The Connecticut statute governing a refusal to submit a breath test provides:

(b) If any such person, having been placed under arrest for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both, and thereafter, after being apprised of such person's constitutional rights, having been requested to submit to a blood, breath or urine test at the option of the police officer, having been afforded a reasonable opportunity to telephone an attorney prior to the performance of such test and having been informed that such person's license or nonresident operating privilege may be suspended in accordance with the provisions of this section if such person refuses to submit to such test. . . .

Conn. Gen.Stat. Ann. § 14–227b(b) (West 2012).

7. The Pennsylvania statute governing refusal of a breath test provides, "[i]f any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person." 75 Pa. Cons.Stat. Ann. § 1547(b.1)(1) (West 2012).

adequate breath sample is not provided within the two-minute timeframe, the machine prompts the *operator* to report whether a refusal has occurred." *Id.* (emphasis added). Officer Lawniczak testified he instructed Bomba to "blow with one steady breath until ... told to stop." *Id.* However, Officer Lawniczak explained Bomba gave "a series of short breaths, not one continuous breath." *Id.* After two minutes had elapsed, the breathalyzer instrument prompted the officer to report whether there had been a refusal, and Officer Lawniczak pressed the "yes" button. *Id.* Officer Lawniczak admitted that Bomba "may have asked to retake the breath test," but the officer stated that she is only required to give one test. *Id.* As a result, Bomba's license was suspended. *Id.* 947. Bomba appealed and the trial court reversed her license revocation, finding Bomba's "initial, unequivocal and unqualified consent to the breath test, her subsequent inability to perform it properly, despite attempting to do so and her immediate request to re-take the breath test, do not amount to a refusal under these circumstances." *Id.* at 949.

On appeal, the appellate court affirmed the determination that Bomba did not refuse the breath test and reinstated her license. *Id.* at 951. The court reasoned that Bomba "made one attempt to provide a breath sample. When it was not successful, she immediately asked to try again. PennDOT offered no evidence that [Bomba] was attempting to delay the testing process or was intentionally producing an inadequate sample." *Id.* at 950. Furthermore, in upholding the trial court's determination that Bomba did not refuse the breath test, the court explained:

> Refusal cases are highly fact-sensitive. The crucial, determinative factor we glean from the cases is whether PennDOT's evidence shows that the licensee deliberately tried to delay or undermine the testing process. Such evidence was simply not present in this case. Rather, the evidence showed, and the trial court found, that [Bomba] made a good faith, but unsuccessful, attempt to provide a breath sample and immediately requested to attempt the test a second time.

*Id.* at 951.[8]

A review of the record and video recording reveals that Chisolm wanted to take the breath test, blew into the Data-Master, and the instrument produced a steady tone for an extended period of time that indicated sufficient air was going into the instrument. Officer Archibald testified that he is trained to listen for a steady tone when administering a breath test. Unlike the officers' testimonies in *Walker, Householder,* and *Gilliam,* here, according to Officer Archibald, Chisolm's breath test produced a steady tone, indicating that Chisolm was doing what she was supposed to do and that air was going into the instrument. Even though the machine ultimately did not register Chisolm's breath sample, at no time did the machine indicate that she was not blowing an adequate sample, as evidenced by the steady tone. Additionally, like *Bomba,* Chisolm consented to the breath test, attempted the test, and asked to take a second test. *No* evidence was presented by the Department, which carries the burden of proof, that Chisolm's failure to register a breath sample resulted from her own fault by faking or thwarting the test, being uncooperative, acting unruly, delaying the administration of the test, ingesting prohibited substances during the observation period, failing to cooperate with the officer's instructions, or behaving in any manner that would amount to a constructive refusal. Furthermore, we find it significant that when Officer Archibald offered Chisolm the opportunity to take the test for a second time, and she agreed to do so, the instrument would not allow for another test. This evidence also suggests Chisolm was not attempting to thwart the test.

---

8. We also note that other jurisdictions have determined that a physical inability or medical condition that inhibits a driver's ability to perform a breath test does not constitute a "refusal." *See Call v. Kansas Dep't of Revenue,* 17 Kan.App.2d 79, 831 P.2d 970, 972 (1992) (stating that the Kansas implied consent statute provides that the "[f]ailure of a person to provide an adequate breath sample or samples as directed shall constitute a refusal unless the person shows that the failure was due to physical inability caused by a medical condition unrelated to any ingested alcohol or drugs"); *Vill. of Elkhart Lake v. Borzyskowski,* 123 Wis.2d 185, 366 N.W.2d 506, 509 (1985) ("A person is deemed not to have refused the test if it is shown that the refusal was due to a physical inability to submit to the test as a result of physical disability or disease unrelated to the use of alcohol or controlled substances.").

Officer Archibald testified that he had "no clue" why the instrument would not register her sample, that the DataMaster "just didn't read it," and the instrument "didn't come up with any errors." Despite the officer's testimony that he did not know why her breath sample would not register, Officer Archibald pressed "yes" when prompted by the DataMaster to answer whether Chisolm refused the breath test. Thus, Officer Archibald decided that Chisolm refused even though he did not know why the instrument would not register her breath sample.[9] Under these circumstances, Officer Archibald's decision to press "yes," notwithstanding his own testimony, caused the instrument to print a refusal, and the decision was an arbitrary and capricious act and a manifest abuse of his discretion resulting in Chisolm's license being revoked arbitrarily. *See Peake*, 375 S.C. at 595, 654 S.E.2d at 288 (noting that while the license to operate a motor vehicle is a mere privilege that is always subject to revocation or suspension for any cause related to public safety, it cannot be revoked arbitrarily or capriciously).

Here, we have a situation where the ALC relied on, as its sole basis to affirm the hearing officer's determination of refusal, the component of SLED policies and procedures that state an inadequate sample is furnished "as determined by the instrument." We recognize that the policies and procedures state that a refusal *can* occur when the instrument determines there is not an adequate sample. However, the policies do not mandate a refusal in all circumstances where an adequate sample is not registered, particularly in instances, like here, where the determination of a refusal would be arbitrary and capricious.

The policies provide the officer with discretion to determine whether the subject's failure to blow an acceptable breath

9. We find problematic Officer Archibald's statement that he had "no clue" why the DataMaster would not register a test result in light of his observations of Chisolm's continued and steady blow into the machine. If the prosecution does not know why the machine did not register the breath sample, we question how a citizen would know, especially in light of the difficulty in obtaining the software underlying the DataMaster based on its proprietary nature. *See* S.C.Code Ann. 56–5–2934 (Supp.2012) (stating SLED is required to "produce all breath testing software in a manner that complies with any and all licensing agreements").

sample was a refusal. We also note that SLED's policies and procedures provide that "INVALID SAMPLE DETECTED," "DETECTOR OVERFLOW DETECTED," or "INTERFER-ENCE DETECTED" readings by the instrument are not alone a refusal situation. *See* SLED Policies & Procedures § 8.12.5(L)(2)(f)(iv)–(vi).

Similarly, if an acceptable breath sample is not provided in the two-minute period, the DataMaster prompts the officer to make a determination about whether the subject refused the test. SLED's policies and procedures are designed for the officer to determine whether a test subject's inability to register a sample was based on the fault of the subject or any attempt to thwart the test. Moreover, the policy specifically provides that a "NO" can be entered "if the subject failed to provide an acceptable breath sample through no fault of his/her own." SLED Policies & Procedures § 8.12.5(L)(2)(f)(vii). Thus, the instrument's failure to regis-ter a test report in and of itself, absent other facts, does not end the inquiry in determining whether the subject refused the breath test.

The record indicates Chisolm did not refuse to take the test and the Department did not produce any evidence indicating that she was trying to fake or thwart the test, be uncoopera-tive, act unruly, delay the administration of the test, ingest prohibited substances during the observation period, fail to cooperate with the officer's instructions, or behave in any manner that would amount to a constructive refusal. We find it fundamentally unfair under the facts herein to label as a refusal a situation where Chisolm blew for such an extended length of time with a steady tone by the instrument, absent any allegations of fault by Chisolm or any attempt to fake or thwart the test. Based on the facts and circumstances of this case, Officer Archibald's decision to enter a refusal, in light of his own testimony, was arbitrary and capricious, and the State failed to meet its burden of producing evidence to support Officer Archibald's determination of refusal.

Based on the foregoing, the ALC's decision to sustain the hearing officer's determination of a "refusal" is arbitrary and capricious. Accordingly, the order of the ALC is hereby

**REVERSED.**

FEW, C.J., and WILLIAMS, J., concur.